**Robert CORBETT, Alexander Roca, Peter Furtado, and Dennis Farrell, as Trustees and Fiduciaries of Teamsters Local 814 Pension, Annuity and Welfare Funds, Plaintiffs,**

v.

**GUARDIAN WORLDWIDE MOVING COMPANY, Defendant.**

**No. 92–CV–4575 (DRH).**

United States District Court,
E.D. New York.

Dec. 13, 1995.

Friedman & Levine by Eugene S. Friedman, Bruce S. Levine, New York City, for Plaintiffs.

Fischer Weisinger & Caliguire by Mitchel J. Shornick, New York City, for Defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Presently before the Court is Plaintiffs' application for attorneys' fees and costs, and Defendant's motion for reconsideration of, and relief from, the Court's Order dated June 24, 1994; alternatively, Defendant seeks the Court's permission to supplement the record on appeal. For the reasons indicated below, Plaintiffs' application is granted and Defendant's motions are denied.

### Background

Plaintiffs commenced the instant action in September 1992, seeking "to recover unpaid and delinquent contributions" to Teamsters Local 814 Pension, Annuity and Welfare Funds (the "Funds"). (*See* Compl. ¶ 1.) Plaintiffs alleged that Defendant Guardian Worldwide Moving Company ("Guardian") "was and is a party to and bound by a series of collective bargaining agreements with Local 814 ...," and that such "agreements require Guardian to contribute certain amounts of money to the Funds...." (*Id.* at 7.) Plaintiffs claimed that Guardian failed to make payments owed for November 1991 to January 1992, and March 1992, as it was

obligated to do so pursuant to a settlement agreement and a confession of judgment entered into by the parties in May, 1992. (*See id.* ¶¶ 12–17.) Plaintiffs further claimed that Guardian owed the Funds contributions for the months of April 1992 through July 1992. (*Id.* ¶ 19.) Finally, Plaintiffs requested that, pursuant to 29 U.S.C. § 1132(a)(3), Guardian be permanently enjoined "from continuing its practice of making untimely payments to the Funds." (*See id.* ¶ 25; *id.* at 10.)

In March 1993, the parties executed a stipulation for entry of Consent Judgment; such Consent Judgment was ordered by the Court on April 14, 1993. Pursuant thereto, Guardian admitted liability to the Funds in the amount of $427,980.33, for the period of November 1991 through February 1993. (Apr. 14, 1993 Consent J. at 2.) Guardian obligated itself, *inter alia*, to pay $401,867.37 [1] on a monthly installment basis, each payment to be made by certified check. (*Id.* at 3.)

Guardian agreed that if it failed to make timely payments pursuant to the Consent Judgment,

> the entire unpaid balance ( [at that time] ... $401,867.37), plus the additional liquidated damages not included in the foregoing payment schedule for the months of March 1992 through February 1993 ($26,112.96), plus whatever additional interest, liquidated damages, and attorneys' fees and costs the Funds may be entitled to, shall become immediately due and owing upon Guardian's failure to cure any such default....

(*Id.* at 4.) Finally, Guardian agreed to "be permanently enjoined to make all contributions required by its collective bargaining agreements with Teamsters Local 814 in the time and manner established by the Funds." (*Id.* at 4–5.)

In May 1994, Plaintiffs filed a motion requesting that the Court enter judgment against Guardian in accordance with the Consent Judgment, claiming that Guardian had "defaulted on its monthly obligations in virtu-

---

**1.** That figure equals the sum total of the amount for which Guardian admitted liability, less one-half of the liquidated damages due for the months of March 1992 through February 1993. (Apr. 14, 1993 Consent J. at 3.)

ally every month since the entry of the Consent Judgment." (Pls.' May 10, 1994 Mem. Supp. at 3.) Specifically, Plaintiffs indicated that "Guardian ha[d] only paid on or about the tenth day following written notice of its default in each and every month it has been subject to the Consent Judgment." (*Id.*) Further, Plaintiffs stated that "[i]n April of 1994, Guardian once again defaulted and, after receiving another ten day notice regarding its default, presented checks to the Funds which it then advised would not be honored by its bank." (*Id.*) In violation of Local Civil Rule 3(b), Guardian failed to file a memorandum in response to Plaintiffs' motion;[2] instead, it relied upon an affidavit by its president, which was devoid of any supporting authority. (*See* Mariani May 26, 1994 Affid.)

By Order dated June 24, 1994, the Court granted Plaintiffs' motion for entry of judgment against Guardian for default under the terms of the Consent Judgment. (*See* June 24, 1994 Order.) Specifically, the Court directed that "pursuant to the consent judgment dated April 14, 1993, judgment shall be entered in favor of plaintiffs and against defendant in the amount of $146,438.22."[3] (June 24, 1994 Order at 2.) Further, the Court indicated that, in its discretion, it would "grant attorneys' fees and costs to plaintiffs from the date of the consent judgment as permitted by 29 U.S.C. § 1132(g)." (*Id.*)

Pursuant to the Court's June 24, 1994 Order, Plaintiffs filed an application for attorneys' fees and costs. Guardian opposes Plaintiffs' application and seeks "reconsideration of the Court's ... order of June 24, 1994 and relief from the judgment of June 24, 1994...." (Def.'s July 19, 1994 Not. Cross-mot. at 1.) Alternatively, Guardian requests the Court's permission to "supplement the record on appeal." (*Id.*) First, the Court

addresses Guardian's motions, and then considers Plaintiffs' application.

## DISCUSSION

### 1. Guardian's Motions

#### A. Rule 59(e) Motion

Federal Rule of Civil Procedure 59(e) ("Rule 59(e)") provides as follows:

A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

Fed.R.Civ.P. 59(e). Also implicated is Local Civil Rule 3(j) ("Local Rule 3(j)") which provides as follows:

A notice of motion for reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion.... There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.... No affidavits shall be filed by any party unless directed by the court.

Local Civ.R. 3(j).

As an initial matter, the Court notes that Guardian neither requested nor received the Court's permission to file affidavits in support of its reconsideration motion; nevertheless, in contravention of Local Rule 3(j), Guardian submitted an affidavit by Michael Mariani, the president of Guardian; such affidavit, however, was devoid of any supporting authority. (*See* Mariani July 19, 1994 Affid.) Moreover, Guardian, again in contravention of Local Rule 3(j), did not serve with its notice of motion a memorandum of law in support thereof. Instead, *after* Plaintiffs filed their response papers, which noted Guardian's failure to comply with the requirements of Local Rule 3(j), (*see* Pls.' Reply Mem. at 8), Guardian served and filed

---

2. Local Civil Rule 3(b) provides, in pertinent part, as follows:

Upon any motion, ... [t]he opposing party shall serve and file with the papers in opposition to the motion ... an answering memorandum, setting forth the points and authorities relied upon in opposition[.] Failure to comply may be deemed sufficient cause for the ... granting of the motion by default.

Local Civ.R. 3(b).

3. Plaintiffs had requested judgment in the amount of $145,872.58 plus daily interest in the amount of $8.08 for the period between April 15, 1994 and entry of judgment. (*See* Levine May 9, 1994 Affid. ¶ 12.)

a memorandum in support of its motion.[4] (*See* Guardian Aug. 10, 1994 Mem.Supp.) In any event because, as is explained below, Guardian's motion is untimely, it is denied on that ground, rather than because of any procedural deficiency.

Guardian is requesting reconsideration of the Court's Order that was dated June 24, 1994, filed on that same date, and pursuant to which judgment was entered on June 29, 1994. Thus, to be timely, Guardian's motion for reconsideration should have been served on or before ten (10) days from June 29, 1994 (*see* Fed.R.Civ.P. 59(e)—that is, on or before July 14, 1994. Guardian's Notice of Motion, however, admittedly was not served until July 19, 1994. (*See* Shornick July 19, 1994 Cert.Serv.) Further, Guardian's supporting memorandum, as well as an additional declaration from its attorney, were not served until August 11, 1994. (*See* Shornick Aug. 11, 1994 Cert.Serv.) Therefore, Guardian's motion for reconsideration is clearly untimely.

Federal Rule of Civil Procedure 6(b) ("Rule 6(b)") expressly states that the Court does not have discretion to extend the time within which a party may make a Rule 59(e) motion for reconsideration.[5] *See* Fed. R.Civ.P. 6(b); *see also Stirling v. Chemical Bank,* 511 F.2d 1030, 1032 (2d Cir.1975) ("[T]he 10–day period prescribed by Rule 59(e) ... cannot be enlarged."). Thus, Guardian's motion for reconsideration pursuant to Rule 59(e) is denied as untimely.[6]

## B. *Rule 60(b) Motion*

■ Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") provides five (5) specific grounds upon which "the court may relieve a party ... from a final judgment...." Fed. R.Civ.P. 60(b). Of these, Guardian relies upon Rule 60(b)(2), which provides for relief from a final judgment because of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). Further, Guardian relies upon Rule 60(b)(6), which provides that the court may relieve a party from a final judgment for "any ... reason justifying re-

4. Specifically, Guardian served its memorandum and a declaration by its attorney approximately three (3) weeks after serving its Notice of Motion, and several days after the filing of Plaintiffs' response papers. (*See* Shornick Aug. 11, 1994 Cert.Serv.) Thus, Plaintiffs' response papers do not address the arguments that are raised for the first time in Guardian's memorandum and its attorney's August 10, 1994 declaration.

5. Guardian's suggestion that the Court may entertain an untimely motion for reconsideration pursuant to Local Rule 3(j), (*see* Def.'s Aug. 10, 1994 Mem.Supp. at 4), is rejected. First, the Court notes that it is doubtful that a party may circumvent the operation of Rule 6(b), which prohibits an extension of time for the filing of a Rule 59(e) reconsideration motion, by filing its reconsideration motion pursuant to Local Rule 3(j). *See Knight v. U.S. Fire Ins. Co.,* 1986 WL 3787 (S.D.N.Y. Mar. 28, 1986).

In any event, Guardian's reconsideration motion was made pursuant to Rule 59(e), not pursuant to Local Rule 3(j). (*See* Shornick July 19, 1994 Decl. ¶ 2; *see also* Shornick Aug. 10, 1994 Decl. ¶ 2.) In *response* to Plaintiffs' opposition thereto—which maintained that a Rule 59(e) motion was untimely and that the Court was without discretion to entertain the same—Guardian then filed a memorandum of law suggesting that its reconsideration motion was made pursuant to Local Rule 3(j). Nevertheless, the record supports a contrary finding—that is, Guardian has

*not* moved for reconsideration pursuant to Local Rule 3(j) and, as discussed above, the Rule 59(e) motion that Guardian *has* filed is untimely.

6. Guardian's memorandum in support of its cross-motion contains three (3) points, the first of which is that "plaintiffs' acceptance, possession, indorsement and continued retention of defendant's checks suspended the underlying obligation, as a matter of law, until plaintiffs presented the checks for payment and received notice of dishonor." (Def.'s Aug. 10, 1994 Mem.Supp. at 2.) In short, Guardian is arguing that, pursuant to New York's Uniform Commercial Code, it was not in default under the terms of the Consent Judgment, and that, thus, the Court erred when it found that Guardian had so defaulted.

As an initial matter, because Guardian failed to submit a memorandum of law in opposition to Plaintiffs' May 1994 motion for judgment, (*see supra* at 326), this issue was not raised prior to this time; therefore, it would appear that such an argument may not be advanced in a motion to reconsider which is addressed to "controlling decisions or factual matters that were put before [the Court] on the underlying motion" but were allegedly overlooked by the Court. *See, e.g., In re New York Asbestos Litig.,* 847 F.Supp. 1086, 1141 (S.D.N.Y.1994). In any event, because the Court has found that Guardian's motion for reconsideration is untimely, it does not address Guardian's argument that it was not in default.

lief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). "It lies in the Court's discretion whether to grant or deny such relief." *E.g., Nguyen Huu To v. Bentsen,* 1995 WL 150043, at *1 (S.D.N.Y. Apr. 5, 1995) (citing *Branum v. Clark,* 927 F.2d 698, 704 (2d Cir.1991)).

The "newly discovered evidence," Fed. R.Civ.P. 60(b)(2), that is relied upon by Guardian relates to two (2) checks issued by Guardian to Teamsters Local 814; each of these checks was dated April 26, 1994, one was for the amount of $20,000.00, and the other was for the amount of $16,388.12. (*See* Shornick Aug. 10, 1994 Decl. at Ex. A.) The back of each check bears a stamp that reads as follows:

> PAY TO CHEMICAL BANK
> OR ORDER ...
> TEAMSTERS LOCAL 814
> WELFARE & PENSION FUND
> ADMINISTRATIVE A/C

(*See id.*) Guardian argues that

> [t]he backs of the checks in question clearly show that Plaintiffs indorsed the checks. Thus it is now clear that plaintiffs accepted, possessed, *indorsed* and continued to retain the checks in issue. Thus, as argued in the memorandum of law submitted herewith, the underlying obligations of defendant were, as a matter of law, suspended until presentment and notice of dishonor.

(Shornick Aug. 10, 1994 Decl. ¶ 4 (emphasis in original).)

■ The Court finds that this ground advanced by Guardian does not support relief from the Court's June 24, 1994 Order, because Guardian has neither alleged nor demonstrated that this purported "newly discovered evidence" could not, by due diligence, have been discovered within ten (10) days of the entry of judgment. *See* Fed.R.Civ.P. 60(b)(2). Indeed, Guardian did not request that its checks be returned by Plaintiffs until July 20, 1994, some twenty (20) days after entry of judgment. (*See* Shornick Aug. 10, 1994 Decl. at Ex. A.) Plaintiffs promptly responded, returning the checks to Guardian on July 26, 1994. (*See id.*) In light of the above, the Court finds that Guardian has not demonstrated that it should be relieved from the Court's Order of June 24, 1994 because of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[7] Fed.R.Civ.P. 60(b)(2).

■ Next, the Court turns its attention to the remaining arguments offered by Guardian as to why it should be relieved, in part or in whole, from the Court's June 24, 1994 Order. Such arguments are apparently advanced pursuant to Rule 60(b)(6) which, as indicated above, provides that the court may relieve a party from a final judgment for "any ... reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6).

By declaration dated July 19, 1994, Guardian's attorney requests that the judgment in the amount of $146,438.22 be reduced by the amount of $293.78 because "the $20,000 installment payment due on 4/15/93 under paragraph 2 of the Consent Judgment was overpaid by the amount of $293.78 which amount was not deducted from future payments or credited in Plaintiff's [sic] application for entry of judgment." (Shornick July 19, 1994 Decl. ¶ 5.) In response, Plaintiffs inform the Court that prior to the instant motion, Guardian "made no attempt since the alleged overpayment occurred in April of 1993 to receive credit from the Funds." (Pls.' Aug. 5, 1995 Reply Mem. at 15.)

The Court notes that Guardian's attorney does not claim that Guardian was reasonably unaware of such an alleged overpayment when it opposed Plaintiffs' May 1994 request for entry of judgment; rather, Guardian's attorney argues that *he* was not informed by his client of the same until July 19, 1994, more than one (1) year after the purported overpayment and two (2) months after the filing of the Consent Judgment. (*See* Shornick July 19, 1994 Decl. ¶ 5.) In light of the

---

7. In light of the Court's finding that the requirements of Rule 60(b)(2) have not been satisfied, and that Guardian's Rule 59(e) motion is untimely, (*see supra* at 327), the Court need not, and does not, address the legal significance, if any, of the stamps that appear on the back of the checks at issue.

foregoing, assuming *arguendo* that Rule 60(b)(2) permitted the Court to amend its June 24, 1994 Order in the manner requested by Guardian, the Court, in its discretion, declines to do so, at least until such time as Guardian represents that it has attempted, in good faith, to resolve the issue of any overpayment prior to requesting the Court's intervention.

██ Finally, Guardian's attorney suggests that Guardian should be relieved from the Court's June 24, 1994 Order, at least in part, because he was "informed ... [on July 19, 1994] that the collective bargaining agreement between Teamsters Local 814 and Defendant Guardian expired on March 31, 1994 and that this *may* [a]ffect the obligation to pay self-reported monthly contributions to the Funds as distinct from the installment payments in the consent judgment calculated to pay arrears." (Shornick July 19, 1995 Decl. ¶ 6 (emphasis added).)

No further information is provided by Guardian to explain this statement, and Plaintiffs correctly note that "no self-reported monthly contributions were claimed from Guardian for any months beyond March of 1994." (Pls.' Aug. 5, 1994 Reply Mem. at 15.) Therefore, the Court finds that the above-quoted statement from Guardian's attorney is clearly insufficient for the Court to relieve Guardian, in part or in whole, from the operation of the June 29, 1994 judgment.

██ Alternatively, the Court declines to do so on the grounds that Guardian, which inexplicably did not raise this issue when it opposed Plaintiffs' May 1994 request for entry of judgment, has not represented that it has attempted, in good faith, to resolve with Plaintiffs the issue of whether any contributions claimed by Plaintiffs were not in fact due, and if such were the case, to receive a credit from Plaintiffs for the same. In light of the foregoing, the Court finds that the asserted expiration of Guardian's collective bargaining agreement on March 31, 1994 is not sufficient grounds to justify relief from

the operation of the June 29, 1994 judgment.[8] *See* Fed.R.Civ.P. 60(b)(6).

### C. *Application to Supplement Record for Appeal*

Guardian alternatively, without explanation, has requested the Court's permission to "supplement the record for appeal." (Def.'s July 19, 1994 Not.Cross-mot. at 1.) Specifically, Guardian's president requests that his affidavit, sworn to on July 19, 1994, supplement the record on appeal. (Mariani July 19, 1994 Affid. ¶ 16.) Obviously, however, that affidavit by Mariani, which was filed in support of Guardian's cross-motion *is* already part of the record in the case at bar and, thus, will be part of the record on any appeal. *See* Fed.R.App.P. 10(a).

██ Guardian does not cite any authority for the instant application. Nevertheless, the Court notes that Federal Rule of Appellate Procedure 10(e) ("Rule 10(e)") provides as follows:

> If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court either before or after the record is transmitted to the court of appeals, ... may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

Fed.R.App.P. 10(e).

"Rule 10(e) provides a mechanism for ensuring that the record reflects accurately what transpired in the district court." *Hatco Corp. v. W.R. Grace & Co.*, 859 F.Supp. 769, 772 (D.N.J.1994), *aff'd*, 59 F.3d 400 (3d Cir. 1995). "It does not authorize a district court 'to add to the record on appeal matters that

---

8. Finally, the Court rejects Guardian's suggestion, unsupported by any authority, that "the bad faith and unclean hands of plaintiffs and their attorneys since the entry of judgment by the

Court's clerk on June 29, 1994" is reason for relief from such judgment. (*See* Mariani's July 19, 1994 Affid. ¶¶ 11–13.)

did not occur there in the course of proceedings leading to the judgment under review.'" *Id.* (quoting *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1165 (3d Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987)).

■ Guardian has not argued that the present record does not accurately reflect what has occurred in this court. Nor has Guardian suggested that any material information has either been omitted from the record or has been misstated therein. In light of the foregoing, and the fact that Mariani's July 19, 1994 Affidavit is already part of the record, Guardian's request to supplement the record on appeal is denied.

## 2. *Plaintiffs' Application for Attorneys' Fees and Costs*

Finally, the Court turns its attention to Plaintiffs' application for attorneys' fees and costs.[9] Plaintiffs initially requested an award of attorneys' fees in the amount of $8,102.50 for the period of April 14, 1993 through June, 1994, with the opportunity to update their application to reflect the fees incurred on the instant application "and related work in connection with the underlying action." (*See* Levine July 1, 1994 Decl. ¶¶ 3, 6.) Later, Plaintiffs updated their application to request an additional award of $6,068.75 to reflect most of the work performed by Plaintiffs' attorneys for the period of July 1, 1994 through August 4, 1994, and requested "the opportunity to submit an ultimate application upon the completion of this lawsuit." (Levine Aug. 5, 1994 Decl. ¶ 8.) Thus, presently before the Court is Plaintiffs' request for an interim fee award in the amount of $14,171.25 (which represents Plaintiffs' initial request of $8,102.50 plus the additional requested amount of $6,068.75).

In support of their application, Plaintiffs have provided information on, *inter alia,* the hourly rates and the number of hours billed by the two (2) partners and three (3) associates who performed work for Plaintiffs in the case at bar. (*See* Levine July 1, 1994 Decl. ¶ 4.) Additionally, Plaintiffs have provided copies of detailed time slips for each of these attorneys. (*See id.* at Ex. B; Levine Aug. 5, 1994 Decl. at Ex. A.)

In opposing the instant application by Plaintiffs, Guardian's president argues, without supporting authority, that the amount of Plaintiffs' request is excessive. (*See* Mariani July 19, 1994 Affid. ¶ 14.) First, Guardian's president takes issue with the practice by Plaintiffs' attorneys of billing in quarter-of-an-hour increments. (*See id.* ¶ 15.) Next, Guardian's president claims that the eight (8) hours billed for preparation of Plaintiffs' May 1994 motion papers, and the three (3) hours billed for preparation of restraining notices and other activities on June 28, 1994, are excessive amounts of time for the tasks performed.[10] (*See id.*)

■ As an initial matter, this Court finds that an attorney's billing in quarter-of-an-hour units is not unreasonable *per se. See, e.g., Wood v. Brosse U.S.A., Inc.,* 149 F.R.D. 44, 52 (S.D.N.Y.1993). Further, in response to Guardian's allegation that "each and every telephone call is billed [by Plaintiffs' attorneys] at a minimum of .25 hours," (Mariani July 19, 1994 Affid. ¶ 15), Plaintiffs' attorneys responded that it is their practice *not* to bill for brief and incidental phone conversations. (Levine Aug. 5, 1994 Decl. ¶ 3.) In light of the foregoing, the Court finds that the billing by Plaintiffs' attorneys in quarter-of-an-hour increments is not a sufficient basis for denying Plaintiffs' application for attorneys' fees.

Next, the Court finds without merit the contention by Guardian's president that the eight (8) hours billed for the preparation of Plaintiffs' May 1994 motion papers was excessive. Specifically, the Court finds that eight (8) hours is not an unreasonable amount of time for Plaintiffs' attorneys to, *inter alia,* review the voluminous case file in the case at bar, compute the requested damages, and prepare a notice of motion, a detailed attorney's declaration and a supporting

---

**9.** In its June 24, 1994 Order, the Court stated that, in its discretion, it would grant, pursuant to 29 U.S.C. § 1132(g), attorneys' fees and costs to Plaintiffs from the date of the Consent Judgment. (*See* June 24, 1994 Order at 2.)

**10.** As noted by Plaintiffs, "Guardian does not challenge the hourly rates charged by the various attorneys who performed work on this matter." (Pls.' Aug. 5, 1994 Reply.Mem. at 2.)

memorandum of law. (*See* Levine Aug. 5, 1994 Decl. ¶ 4; *see also* Levine July 1, 1994 Decl. at Ex. B.) Similarly, after reviewing the declaration of the attorney for Plaintiffs who was responsible for collection matters, (*see* Weekley Aug. 5, 1994 Decl.), as well as the related time sheets, (*see* Levine July 1, 1994 Decl. at Ex. B), the Court rejects the suggestion by Guardian's president that the "preparation [by Plaintiffs' counsel] of restraining notices and other activities on 6/28, in advance of the clerk's entry of judgment, billed at 3.5 hours, is . . . excessive." (Mariani July 19, 1994 Affid. ¶ 15.)

Finally, the Court notes that it has reviewed all of the detailed time sheets submitted by Plaintiffs in support of their application for attorneys' fees, and finds that Plaintiffs' request for an interim fee award in the amount of $14,171.25 is not unreasonable. In light of the foregoing, the Court grants Plaintiffs' application for such an award. Plaintiffs may submit, on or before January 3, 1996, a detailed request, with supporting documentation, for *all* attorneys' fees and costs incurred for the period of time between July 1, 1994 to and *including* January 3, 1996; Plaintiffs will *not* be permitted, at some later date, to update any award of fees for the period of time prior to January 3, 1996. Guardian may serve and file a response to Plaintiffs' updated application within seven (7) days of receipt thereof.[11]

### Conclusion

For the reasons set forth above, Guardian's motions pursuant to Rule 59(e) and Rule 60(b) are denied, as is Guardian's request for permission to supplement the record on appeal. Plaintiffs' application for an interim fee award in the amount of $14,171.25 is granted.

SO ORDERED.

---

[11] Finally, the Court notes the request by Guardian's attorney for attorneys' fees and costs. (*See* Shornick July 19, 1994 Decl. ¶ 9.) As an initial matter, it is questionable whether such a request is properly before the Court, *see* Fed.R.Civ.P. 7(b)(1), as Guardian's July 19, 1994 Notice of Motion did not indicate that it was requesting attorneys' fees. In any event, to the extent that such application has been properly made, the Court finds that an award of attorneys' fees to Guardian is not warranted and, accordingly, Guardian's request for the same is denied.