**Gary LANG, Plaintiff,**

v.

**BIRCH SHIPPING COMPANY, Defendant.**

**No. 78 Civ. 3963 (CHT).**

United States District Court, S. D. New York.

Sept. 29, 1981.

Paul C. Matthews, New York City, for plaintiff.

William M. Kimball, New York City, for defendant.

## OPINION

TENNEY, District Judge.

At the end of a six-day trial, the jury returned a special verdict which stated that the defendant was 75% responsible for the plaintiff's injuries, that the plaintiff was 25% contributorily negligent, and that the total damages were $100,000, thus leaving the plaintiff with a judgment for $75,000 against the defendant. The plaintiff, at this time, moves for a new trial pursuant to Federal Rule of Civil Procedure ("Rule") 50(b) on the grounds that the jury's award was clearly inadequate and that the finding of contributory negligence was unsupported by any evidence.

The plaintiff, Gary Lang, was an able-bodied seaman aboard the SS Point Julie, a grain-carrying tanker, from January 31, 1978 when she was being loaded in Philadelphia, until April 23, 1978 when Lang left the ship in New Orleans. This period included approximately three weeks in March when the Point Julie's cargo of grain was unloaded in Alexandria, Egypt. Mr. Lang testified that the ship's atmosphere was constantly full of grain dust, especially during the loading and unloading; that the ventilation system was broken, allowing grain dust to enter his cabin; that the shipping company failed to provide adequate masks or other protective devices;

and that as a result of his exposure to grain dust, he has suffered chronic obstructive pulmonary disease which renders him permanently disabled. The plaintiff offered expert testimony to corroborate his medical condition and to estimate his loss of earnings, past and future.

Through cross-examination and several of its own witnesses, the defendant urged that the grain dust was not unreasonable; that the safety precautions were adequate; that safety masks were available to those who wanted them, at least until the last few days of unloading; that the plaintiff could have taken additional precautions to minimize his illness, including using the available masks and leaving the ship; and that plaintiff's damage claims were grossly inflated in light of his diabetes, sinusitis, and history of working fewer months per year than he claimed. In response to this motion, defendant adds that the jury acted reasonably in awarding damages in light of the weaknesses in the plaintiff's expert's estimates. Defendant's Brief in Opposition to Plaintiff's New Trial Motion ("Defendant's Brief") at 1–3.

■ On a motion for a new trial, the Court is governed by the following words of the Second Circuit:

The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not.

*Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978), *quoting* 6A Moore's Federal Practice and Procedure ¶ 59.08[5], at 59–160 to –161 (1979) (footnotes omitted); *Compton v. Luckenbach Overseas Corp.*, 425 F.2d 1130 (2d Cir.), *cert. denied*, 400 U.S. 916, 91 S.Ct. 175, 27 L.Ed.2d 155 (1970). The plain-

tiff is correct that the standard for granting a new trial is considerably more lenient than the standard for granting a judgment notwithstanding the verdict: a new trial may be granted where the court finds the verdict to be against the weight of the evidence, whereas a directed verdict or judgment n. o. v. requires a legal conclusion that the movant is entitled to judgment regardless of the credibility of the witnesses. Memorandum in Support of Plaintiff's Motion for a New Trial ("Plaintiff's Memorandum") at 3. This distinction, however, does not give the trial court a free hand to throw out jury verdicts until its own view is adopted by a subsequent jury. To the contrary, as a general rule, "the court should avoid substituting its judgment for that of the jury." 6A Moore's, *supra*, at 59–169. Furthermore, the opinion in *Bevevino v. Saydjari, supra*, reinforces the propriety of deferring to jury findings. There, the court of appeals ruled that "the district court was not required to grant a new trial simply because he disagreed with the jury." 574 F.2d at 685.

■ In ruling on a motion for a new trial because of inadequate damages, the court "must apply the same standard as in determining whether a liability verdict is against the weight of the evidence." *University Marketing and Consulting, Inc. v. Hartford Life and Accident Ins. Co.*, 413 F.Supp. 1250, 1264 (E.D.Pa.1976) (footnote omitted). In another case involving a claim of inadequate damages, the court wrote:

We are ever mindful that a jury's verdict should not be disturbed except in unusually persuasive circumstances where gross injustice ensues, that the Court should not substitute its own estimate of damages for that announced by the jury; that a jury's verdict should not be disturbed because it was not as generous as the facts in the case warranted.... Where, however, as here, the Court's conscience is shocked by the jury's grossly inadequate award, ... it becomes the bounden duty of the Court to interfere lest a grave injustice result.

*Centrowitz v. Texaco, Inc.,* 49 F.R.D. 142, 143 (S.D.N.Y.1969). In *Centrowitz,* the jury found the defendant liable to the plaintiffs, and then arrived at a very low damage figure. It awarded $8,200 to one plaintiff who was unrefutably hit with tremendous force by the defendant's automobile, and it made no award to the victim's husband's estate which had incurred large expenses as a result of the accident. In an even more dramatic case, the court set aside a verdict of $2,340 which was awarded to the parents of an 18-year-old boy killed in a motorcycle accident for which the jury found he bore no responsibility. *Feinberg v. Mathai,* 60 F.R.D. 69 (E.D.Pa.1973). In short, before a court may set aside an award of damages as inadequate, the inadequacy must be patent and severe, such that leaving the verdict undisturbed would be an unconscionable miscarriage of justice.

██ In this case, the Court's conscience is not shocked by the jury's finding that the plaintiff Lang was 25% contributorily negligent, nor by the finding that his total damages were $100,000. Regarding contributory negligence, the defendant argued strenuously on summation that Lang failed to confine himself to bed, failed to seek a release from his employment on the SS Point Julie, and failed to take proper precautions against the grain dust. In addition, the defendant pointed out that the plaintiff had a history of sinusitis and allergies, and that he was just recovering from the flu, which should have made him even more careful to guard his health. On the basis of these arguments, which were reasonably drawn from the evidence, the jury could have found that Mr. Lang was 25% contributorily negligent.

Regarding the damages awarded, the defendant argued forcefully that the plaintiff's expert's figures were grossly overstated, in that (1) they were based upon an assumed ten months' work per year instead of seven months, which is the actual number Mr. Lang sailed in 1977; (2) they were based upon tanker wages, which are considerably higher than freighter wages, even though Mr. Lang spent only 19 months on tankers during a 27-year career; (3) they made no allowance for any injuries, illnesses or personal absences; and (4) despite the expected increases in contract wages, the expert's figures were way out of line with the general reductions in the industry and with the fact that Mr. Lang's greatest salary as a merchant marine was $10,000, which he earned in 1977. In addition, regarding pain and suffering, Mr. Lang's conditions have been brought under control fairly well through the use of medications (although, he testified, they make him edgy). In light of these arguments, it was reasonable for the jury to find that Mr. Lang's total damages were $100,000.

██ In his reply affidavit, the plaintiff's counsel takes issue with the points made in the defendant's brief. First, counsel states that Mr. Lang was over the flu when he signed on the Point Julie and that leaving the ship would have been a breach of contract. But these facts do not blunt the defendant's argument that Mr. Lang should have taken better care of himself and that he should have absented himself from some of the ship's more rigorous duties. Plaintiff's counsel's statement that defendant's counsel misled the jury should have been expressed to the jury itself, not to the Court. Second, plaintiff's counsel takes issue with defendant's characterization of plaintiff as "an overweight diabetic with chronic sinusitis and a scar on his lung" (a statement made to the Court only, in connection with this motion). Since this statement is substantially true (although incomplete) and since it was not made to the jury, the Court will not set aside the verdict simply because the defendant's statement paints an unfairly one-sided picture of Mr. Lang. The issue here is not the defendant's response to the motion for a new trial, but the adequacy of damages, which the Court finds reasonable. Third, plaintiff objects to the defendant's reference to the principle, "falsus in uno, falsus in omnibus," in regard to Lang's testimony. The only material fact here is that the jury heard admissible evidence which tended to discredit Mr. Lang. The Court will not speculate as to whether the jury discredited

all of the plaintiff's testimony or whether the jury attempted to punish Mr. Lang for any false statements made in the past. Fourth, the plaintiff argues that the amount of damages should shock the Court's conscience and that "[j]ust as there is an upper limit to the amount that can be awarded for pain and suffering, so there must be a lower limit." Reply Affidavit of Paul C. Matthews, sworn to August 19, 1981, ¶ 4. At least within the confines of this case, the Court disagrees. Fifth, the plaintiff challenges the Court's instruction on causation of damages resulting from unseaworthiness. The Court instructed the jury as follows:

> If you find that the Point Julie was unseaworthy, you must then consider whether that unseaworthiness was the proximate cause of Mr. Lang's injuries. As I explained in connection with the negligence claim, you may find that the ship's unseaworthiness was responsible for the plaintiff's injuries if you find that the unseaworthiness *in whole or in part caused* the harm.
>
> Perhaps you will find that several factors, including the ship's unseaworthiness, caused the plaintiff's injuries. If so, you may still find that the unseaworthiness was a proximate cause so long as it *played an important part* in bringing about the plaintiff's harm. On the other hand, if you find that the ship's unseaworthiness was *only incidental* to the plaintiff's injuries, then you must find that the ship's condition was not a proximate cause of the alleged harm.

Transcript at 593–94 (emphasis supplied). The Court stands by its original charge. The phrase, "in whole or in part," adequately conveys the more liberal standard of causation applicable here, without encouraging the speculation or the unfair imposition of damages which might result from the requested charge, "any part, even the slightest." * The Court contrasted unsea-

worthiness which "played an important part" in causing injuries with unseaworthiness which was "only incidental." This reinforced the concept that the defendant would be liable unless its acts were only incidental to the plaintiff's injuries.

The plaintiff's motion for a new trial on the issue of damages is denied.

So ordered.

---

* Plaintiff cites the Transcript at 610, where the Court stated: "That was one we said we would charge, wasn't it?" In fact, when the Court ruled on the requests to charge, it stated: "With respect to the plaintiff's requests, the first 8 are charged either as requested or in substance.... 10 is not charged in that form. The business of 'even the slightest' is inappropriate." Tr. at 510.