**Bill SHEPHERD, Plaintiff,**

v.

**METRO–NORTH COMMUTER RAILROAD CO.,**
**Defendant.**

**No. 90 Civ. 8122 (LLS).**

United States District Court,
S.D. New York.

May 26, 1992.

Rosalind Fuchsberg Kaufman, Jacob D. Fuchsberg Law Firm, New York City, for plaintiff.

Jose Rios, Metro–North Commuter Railroad, New York City, for defendant.

## OPINION AND ORDER

STANTON, District Judge.

Plaintiff Bill Shepherd ("Shepherd") moves for an order entering judgment on

the jury's verdict in the amount of $37,-314.40, or, in the alternative, for a new trial on the grounds that the verdict is the result of a compromise, against the weight of the evidence, grossly inadequate, and it was harmful error for the court to admit defendant's Exhibit F into evidence.

## BACKGROUND

Shepherd sued his employer, defendant Metro–North Commuter Railroad Company ("Metro–North"), pursuant to 45 U.S.C. §§ 51–60, the Federal Employers' Liability Act ("FELA"), alleging that while working for Metro–North he suffered an eye injury because of Metro–North's negligence.

Trial of this action commenced on November 12, 1991. On November 14, 1991 the jury rendered a unanimous verdict in the form of answers to interrogatories.[1] The jury found that Metro–North was negligent and that its negligence contributed to the accident. In the space for lost earnings damages, the jury wrote "$19,600 and see attached sheet." The attached sheet, which all six jurors signed, states: "Our intention is to award Mr. Sheperd (sic) $19,-600 in lost earnings without reduction for legal or any other expenses he may have had or incur in the future. We wish the court to set an amount above this amount for legal fees that are appropriate." The jury awarded no damages for diminution of future earning capacity and future out-of-pocket medical expenses. In the space on the verdict form for damages for pain, suffering and loss of enjoyment of life, the jury wrote "$25,000 − 90% = $2500.00." In response to the last question, the jury found that Shepherd's negligence contributed 90% to causing his injury.

## DISCUSSION

### I. THE JURY'S VERDICT

Shepherd argues that judgment should be entered in his favor in the amount of $37,314.40. He argues that the jury did not intend that the lost earnings damages be reduced by 90%, and therefore the verdict in his favor was for $22,100 [19,600 +

(25,000 less 90%)]. Based on this "verdict", he claims that the ⅓ contingency fee payable to his attorney would be $7,366, and that his additional legal expenses were $7,848.40, all of which should be included to reach a total judgment in the amount of $37,314.40.

■] 1. "The FELA, however, unlike a number of other federal statutes, does not authorize recovery of attorney's fees by the successful litigant." *Norfolk & Western R.R. Co. v. Liepelt*, 444 U.S. 490, 495, 100 S.Ct. 755, 758, 62 L.Ed.2d 689 (1980) (footnote omitted) (dictum); *Thomas v. Burlington Northern R.R. Co.*, 1991 WL 249720, 1991 U.S.Dist.LEXIS 16811 (N.D.Ill.1991). The jury's wish to award Mr. Shepherd his attorney's fees finds no support in the law under which he sued, and it is without effect. Accordingly, Shepherd's attorney's fees and litigation expenses will not be included in the judgment in his favor.

■] 2. Shepherd argues that the jury did not intend that the $19,600 lost earnings damages be reduced by 90%, despite its finding that his own negligence was 90% of the cause of his injury. He relies on the fact that the jury's form of verdict performed the subtraction of 90% from the pain and suffering portion of the award, but did not itself subtract 90% from the lost earnings portion of the award.

Under the FELA, 45 U.S.C. § 53, "the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." Therefore, assuming that the jury found that Shepherd suffered lost earnings of $19,600 because of the accident, that award must be reduced by the percentage of Shepherd's contributory negligence. *See Taylor v. Burlington Northern R.R. Co.*, 787 F.2d 1309, 1314 (9th Cir.1986).

Shepherd argues that it is plausible that the jury found him 90% responsible for causing the accident and found Metro–North 100% responsible for his lost earnings, because of its refusal to allow him to return to work when he attempted to do so.

---

1. A copy of the Verdict is attached to this opinion and order as exhibit 1.

Shepherd suffered his eye injury on July 25, 1990. On or about September 6, 1990 his physician, Dr. Haddad, gave Shepherd a letter authorizing his return to work. However, despite Shepherd's repeated requests to return to work, Metro–North did not allow him to return until he presented all the requisite forms on February 8, 1991.

Shepherd argues that because his lost earnings were not caused by the accident, but rather were caused by Metro–North's independent, intervening, wrongful act of refusing to permit him to return to work, his contributory negligence should not affect this portion of the award.

■ However, the FELA does not provide a cause of action, or allow recovery, under a theory of "wrongful refusal to reinstate." If the accident was not the legal cause of the lost earnings, Metro–North is not liable for them under the FELA. Even if Metro–North were required timely to reinstate Shepherd under some other statute or contract, the basis for that requirement was never alleged in the pleadings or presented to the jury, and therefore the verdict cannot be interpreted as resting on Shepherd's theory of "wrongful failure to reinstate."[2]

The straightforward reading of the verdict is that Shepherd was awarded $19,600 to compensate him for lost earnings, (according to the form's language: "Indicate the amount awarded plaintiff as compensatory damages for: (a) Lost Earnings: $19,-600 ..."), and since his own negligence caused 90% of his injury, those damages must be reduced by 90%.[3]

## II. THE MOTION TO SET ASIDE THE VERDICT

Shepherd argues that if the court does not reconcile the verdict so as to award him $37,314.40, the verdict must be set aside, and a new trial must be ordered.

### 1. Compromise Verdict

■ Shepherd argues that the verdict must be set aside because: "It is obvious that some jurors found no contributory negligence on plaintiff's part and others found 90 percent, with the split verdict enabling the jurors to end their deliberations and not be required to return to court the following day." (Pl.Mem. of Law at 7). Shepherd asserts that after being selected, Juror No. 2 asked to be excused for hardship; that the jury was initially told that it would have Friday November 15 off, but on Thursday, November 14, the jury was informed by the court that if it did not reach a verdict on Thursday, it would continue to deliberate on Friday; that the jury began deliberating at 5:00 p.m. on Thursday and reached a verdict by 7:00 p.m.; that the jury requested information relating to liability and damages at the same time, indicating that it was considering both issues at once; and that the damages awarded were inadequate.

■ A verdict can be set aside if the jurors compromise on the question of liability, but not if they compromise on the amount of damages. *Maher v. Isthmian Steamship Co.*, 253 F.2d 414, 416 (2d Cir. 1958). "[T]he verdict must be inconsistent with the facts adduced at the trial if the reviewing court is to reverse it on the ground of an improper compromise by the jury." *Id.* at 416–17. "[T]he record itself viewed in its entirety must clearly demonstrate the compromise character of the verdict, otherwise it is not error for the trial judge to refuse to set the verdict aside on this ground." *Id.* at 419. *See also, Ajax Hardware Mfg. v. Industrial Plants Corp.*, 569 F.2d 181, 184 (2d Cir.1977) (deci-

2. During deliberations the jury sent out a note (court exh. # 1) requesting "Lose [sic] of earning total and from Dr. Hadad's [sic] letter to present." The court wrote in response: "The total lost earnings are $19,600.00. The lost earnings from the date of Dr. Haddad's Sept. 6, '90 letter to the present are $15,261.80." In awarding damages, the jury did not differentiate between those two figures. If the jury had followed Mr. Shepherd's theory of recovery, pre-

sumably it would have awarded 10% of the amount before Dr. Haddad's letter and the whole amount after it.

3. There was no dispute that the total lost earnings were $19,600, and no basis in the evidence on which the jury could have increased the amount to annul the reduction required by plaintiff's contributory negligence.

sion to grant new trial because of possible compromise verdict not sustainable where "there is an equally reasonable and perhaps even better explanation which involves no jury misconduct."); *Jon S. Posner Realty, Inc. v. HMS Property Management Group, Inc.*, 1992 WL 77574, 1992 U.S.Dist.LEXIS 3537 (S.D.N.Y.1992); *U.S. Football League v. National Football League*, 644 F.Supp. 1040, 1049–50 (S.D.N.Y.1986), *aff'd*, 842 F.2d 1335 (1988).

Here there is no indication of compromise. The jury unanimously found the full amount of lost earnings as damages, unanimously found that plaintiff's negligence was 90% of the cause of his injury, and unanimously expressed the legally ineffectual "intention" to increase his award to cover attorney's fees and expenses. Plaintiff's quarrel with the result arises because of the reduction required by the law, not with any compromise in the verdict.

### 2. *Comparative Negligence and Damages Awarded*

■ Shepherd argues that the verdict must be set aside and a new trial ordered because the jury's finding that he was 90% responsible for the accident was against the weight of the evidence.

However, a reasonable jury could have concluded that the material covering the duct was in fact cardboard, not masonite; that it would not have fallen had Shepherd not attempted to move it; that Shepherd's attempt to correct what he perceived as an asbestos condition was negligent and against Metro–North's work rules; that under the work rules, Shepherd (who was not assigned to work in that area) should have reported the problem and not attempted a repair; and that Shepherd, who is nearsighted, should not have attempted a potentially hazardous repair before observing the situation while wearing his glasses. The jury's finding that Shepherd was 90% responsible for the accident was within its province and not contrary to the clear weight of the evidence.

■ Shepherd argues that the $25,000 awarded to him for pain and suffering was grossly inadequate. "[B]efore a court may set aside an award of damages as inadequate, the inadequacy must be patent and severe, such that leaving the verdict undisturbed would be an unconscionable miscarriage of justice." *Lang v. Birch Shipping Co.*, 523 F.Supp. 1112, 1115 (S.D.N.Y.1981).

A reasonable jury could have concluded that Shepherd's eye was struck only by debris from the duct and not by wood, cardboard, or masonite; that the vitreous detachment of Shepherd's right eye was due to an old injury; and that the possibility of future deterioration of the eye was remote. The jury was entitled to consider that Dr. Haddad authorized Shepherd to return to work, and that Shepherd himself felt ready to work, about six weeks after the accident. The jury's award of $25,000 was within its province and not against the clear weight of the evidence.

### 3. *Discovery Abuses*

■ Shepherd argues that the verdict must be set aside because the court committed reversible error when, over plaintiff's objection, it permitted Metro–North to introduce into evidence a prior inconsistent statement of Shepherd which had never been produced by Metro–North to Shepherd despite his explicit discovery request that Metro–North produce all statements made by the plaintiff relating to the accident.

At trial, however, Shepherd's counsel objected to this document only as tending to show payment from a collateral source. She did not argue that the document should have been produced to her earlier. That objection is deemed waived. *Cf. United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir.1992) (criminal defendant who objected to admission of photographs on ground that government's rebuttal was outside scope of defendant's case and prejudicial, failed to preserve objection that introduction violated the court's prior suppression order). *See also, Archawski v. Hanioti*, 239 F.2d 806, 809 (2d Cir.1956), *cert. de-*

*nied,* 353 U.S. 984, 77 S.Ct. 1283, 1 L.Ed.2d 1142 (1957) (objection to proffered hearsay deemed waived if party fails to interpose timely objection).[4]

4. *Erskine v. Consolidated Rail Corp.,* 814 F.2d 266, 271–73 (6th Cir.1987) which held that if the ambushed party is prejudiced, it is reversible error to allow into evidence exhibits which

## CONCLUSION

The clerk of the court is directed to enter judgment in favor of plaintiff in the amount of $4,460, together with costs and disbursements allowed by law.

should have been produced during discovery, is distinguishable: there "plaintiff objected to the introduction of these exhibits on the ground of surprise." (*Id.* at 268).

**1014**

EXHIBIT 1

Court.
EXHIBIT
#3   11/14/91
7:00 P.M.

**VERDICT**

1.  Did Mr. Shepherd prove by a preponderance of the evidence that Metro-North was negligent and that its negligence contributed to the accident?

YES:  _____✓_____                    NO:  _____

If your answer to Question One is NO your deliberations are complete; sign the verdict form and notify the marshal that you are ready to return to the courtroom.  If your answer to Question One is YES, go on to Question Two.

2.  Indicate the amount awarded plaintiff as compensatory damages for:

    a)  Lost Earnings: $19,600 And See Attached Sheet

    b)  Diminution of Future Earning Capacity:  0

    c)  Pain, Suffering and Loss of Enjoyment of Life: $25,000
                                                        — 90%
    d)  Future Out-of Pocket Medical Expenses:  0
                                                        $2500.00

3a.  Did Metro-North prove by a preponderance of the evidence that Mr. Shepherd was negligent and that his negligence contributed to the accident?

YES:  _____✓_____                    NO:  _____

3b.  If your answer to Question 3a is YES, to what extent, stated as a percentage, did plaintiff's negligence contribute to causing his injury?  ___90___ %

Your verdict must be signed by each juror.  When all have signed, notify the marshal that you are ready to return to the courtroom.

Nov. 12, 1991

2a. OUR INTENTION is to Award MR. Sheperd $19,600 in LOST earnings. without REDUCTION for Legal or any other expenses he may have had or INCURE in The future. We wish the court to set an amount above this amount for legal fees. that are appropriate.