Lorrie FOX, Plaintiff,

v.

CITY UNIVERSITY OF NEW YORK, Bronx Community College, and Research Foundation of the City University of New York, Defendants.

No. 94 Civ. 4398 CSH.

United States District Court, S.D. New York.

May 5, 1999.

86

Bradford D. Conover, Conover & Zayas, New York City, for plaintiff.

Etta Ibok, Office of the Corporation Counsel, New York City, for City University of New York and Bronx Community College.

Barry Levy, Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for the Research Foundation of the City of New York.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

The post-trial motion practice in this employment discrimination case continues apace. The issues presently before the Court are (1) the timeliness of plaintiff's Rule 59 motion for a new trial on damages; (2) the timeliness of defendants' Rule 50(b) motion for judgment as a matter of law ("JMOL") on liability; (3) the timeliness of defendants' more recent Rule 59 motion for a new trial on all issues; and (4) the merits of that more recent defendants' motion, assuming that it was timely made.

The first three issues, relating to timeliness, were raised by the Court sua sponte and have been separately briefed by counsel.

I

Familiarity with all the Court's previous opinions in this case is assumed. The facts are recited only to the extent necessary to explain the resolution of the remaining issues.

The jury decided the factual issues presented at trial by filling out a special verdict form. The verdict was returned on June 10, 1998. On July 27, 1998, the parties filed cross-motions. Plaintiff moved pursuant to 42 U.S.C. § 1981(a) and Rule 39, Fed.R.Civ. P., for an award by the Court of additional backpay, back retirement benefit losses, front pay, and future retirement benefit and medical benefit losses. In the alternative, plaintiff moved under Rule 59(a) for a new trial on damages. Defendants resisted plaintiff's motions, and cross-moved under Rule 50(b) for JMOL on the issue of liability.

In an opinion dated January 25, 1999 ("the January Opinion"), the Court denied plaintiff's motion for additional awards to be set by the Court; granted plaintiff's alternative motion for a new trial on damages; and denied defendants' motion for JMOL on liability.

On February 2, 1999, defendants moved for a new trial on all issues, on the ground that the jury's verdict represented an impermissible compromise on liability and damages. Defendants characterized that motion as one brought under Civil Rule 6.3 of this Court, for reconsideration of the January Opinion. Plaintiff resists that motion, contending that it is untimely or, in the alternative, lacking in merit.

In an opinion dated February 23, 1999 ("the February Opinion"), the Court raised sua sponte the timeliness of each of these post-trial motions, and directed counsel to brief that question. The issue of timeliness arose because of the circumstances described in Part II of this opinion.

## II

On June 10, 1998, shortly after the jury returned its verdict, the Court said to counsel:

> This is a case where both sides made motions under Rule 50, none of which were granted in advance of the verdict. So that motion practice can go on, and I will extend the time of any party to file papers in support of such a motion for 30 days, to and including July 11, and then if you are confronted with such a motion the party opposing such a motion may have three weeks to respond to it, and then the moving party, whoever it is, may have 10 days to file and serve a reply, if so advised.

Tr. 1253.

By *sua sponte* orders dated June 11 and 15, 1998, the time for filing post-trial motions was extended from July 11 to July 13, 1998.

The Clerk of the Court, unaware of the Court's June 10 extension of time for post-trial motions, prepared and presented a judgment in accordance with the jury's verdict, which the Court signed and the Clerk entered on June 23, 1998.

On July 2, 1998, counsel for plaintiff, having noted the entry of judgment, sent a fax to defendants' counsel noting that the judgment was "apparently in error in view of the Judge's order affording both parties leave to file motions with respect to the jury verdict." Counsel presumably had in mind the provisions in Rules 50(b) and 59(b) that motions thereunder "shall be filed no later than 10 days after entry of the judgment." Even excluding Saturdays, Sundays, and legal holi-

days from the computation of that 10–day period, *see* Rule 6(a), the 10 days would have elapsed before the July 13 date specified by the Court for the filing of post-trial motions.

In those circumstances, counsel for the parties sensibly prepared a stipulation dated July 8, 1998, which provided:

1) The judgment entered by the Court dated June 18, 1998 in accordance with the jury verdict, be vacated; and

2) the schedule set by the Court in its order dated June 15, 1998 permitting the parties to file motions with respect to the jury verdict be extended as follows:

a) Motion filing date extended to July 20, 1998;

b) Opposition papers filing date extended to August 10, 1998; and

c) Reply papers filing date extended to August 17, 1998.

That stipulation was endorsed "So Ordered" by Judge Leisure, in my absence from the City, on July 13, 1998.

As noted, the parties filed their post-trial motions on July 27, 1998. Those filings were timely by reason of further stipulations extending the time for filing beyond July 20, the date specified in Judge Leisure's order of July 13.

 The lingering problem in this case arises from the fact that on July 13, when Judge Leisure endorsed the stipulation which *inter alia* vacated the judgment entered on June 23,[1] the 10–day periods for motions against the judgment had elapsed.[2] These

---

**1.** The stipulation presented to Judge Leisure recites that the judgment was "dated June 18, 1998." That is correct, but the judgment was not entered by the Clerk until June 23, which is the operative date for determining the timeliness of post-trial motions under Rules 50 and 59.

**2.** June 23, a Tuesday, the date of entry, is not counted. If July 3 counts, then June 24, 25, 26, 29, 30, July 1, 2, 3, 6 and 7 add up under Rule 6(a) to the 10 days. Plaintiff at bar contends that July 3 should not count, since Chief Judge Griesa decreed it to be a Court holiday. It is unsettled whether the fact that the Court was closed on that day by order of the Chief Judge would have the effect of extending the ten-day deadline, as July 3 fell on an intermediate day. *Compare Prisco v. State of New York,* 1996 WL 596546, at

*8 (S.D.N.Y.1996) (rejecting defendant's timeliness objection to plaintiff's Rule 59 motion, because intermediate days were court holidays and did not count against plaintiff. "Since Saturdays and Sundays are excluded from the computation, as well as Monday, February 12 (Lincoln's Birthday) and Monday, February 19 (Washington's Birthday), days on which the court was closed, plaintiff's motion is timely.") *and United States v. Certain Real Property in Waterboro,* 812 F.Supp. 259, 260 n. 1 (D.Me.1991) (allowing, without discussion, an extension due to an intermediate court holiday) *with Latham v. Dominick's Finer Foods,* 149 F.3d 673 (7th Cir.1998) (majority view that court holiday acts to extend filing deadline, only if that holiday falls on the date that the papers were to be submitted). But I need not

time periods are jurisdictional in nature and ordinarily lie beyond the power of parties or the district court to enlarge them. See February Opinion and cases cited at *Fox v. CUNY*, 1999 WL 97922, at *2. These considerations call into question the timeliness of the parties' cross-motions, filed on July 27, 1998.

■ Arguably these concerns do not arise because it is clear enough that the June 23 judgment was improvidently entered, in view of the Court's prior scheduling orders on June 10, June 11, and June 15 for the filing of post-trial motions. On that analysis, the June 23 judgment should be disregarded as a nullity, a reality recognized by the parties when they prepared their stipulation vacating it.

However, assuming the validity of the June 23 judgment, I nonetheless conclude that the parties' original post-trial motions were timely by virtue of the equitable "unique circumstances" rule, as articulated by the Supreme Court in *Thompson v. I.N.S.*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964).

■ In its most exacting form, "[t]he doctrine of unique circumstances applies where an affirmative action by the court has misled" the parties. *In re Weston*, 18 F.3d 860, 863 (10th Cir.1994); *see also Pickering v. Provost*, 1993 WL 389293, at *4 (W.D.N.Y. 1993) (" For the unique circumstances relief to kick into action, there must be some tangible representation or acknowledgment by the district court upon which the seemingly delinquent party has relied.") citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 178–79, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989).

There is force to plaintiff's argument that since this Court *sua sponte* extended the time for filing motions, and since she relied thereon, she has shown "unique circumstances" which bring her within the Supreme Court's holding in *Thompson*. In *Thompson*,

the petitioner's Rule 52 and Rule 59 motions, filed twelve days after the entry of judgment, were held untimely by the district court. *See* Fed.R.Civ.P. 52(b), 59(e). The Supreme Court vacated the district court's dismissal, noting that petitioners had relied on the district court's statement that the Rule 59 motion had been filed "in ample time" and holding that the case came within the "unique circumstances" doctrine enunciated in *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962). *Thompson*, 375 U.S. at 386–87, 84 S.Ct. 397.

To be sure, the Supreme Court has subsequently elucidated—and, according to all the courts that have discussed it, has narrowed—the holding of *Thompson*, stating that it "applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). *Cf. Endicott Johnson Corp. v. Liberty Mutual Ins. Co.*, 116 F.3d 53, 57 (2d Cir.1997) (construing analogous timeliness provisions in the Rules of Appellate Procedure: "Where, however, it is not the court that has misled the party who would appeal, and that party has simply erroneously interpreted the rules with regard to the time for appeal, the circumstances do not warrant an extension beyond the time limits provided by the Rules.").

■ Even considering a narrowed reading of *Thompson*, the case at bar is precisely the type of case contemplated by the unique circumstances rule. In *Thompson*, the Court recited the facts that compelled an equitable exception in *Harris Truck*: "Here as there, petitioner did an act which, if properly done, postponed the deadline for the filing of his appeal. Here as there, the District Court concluded that the act had been properly

---

decide that issue. If July 3 does not count, July 8 becomes the tenth day. That was the date of counsel's stipulation, but it could have no effect in vacating the June 23 judgment until Judge Leisure made the stipulation an order of court by endorsing it on July 13. Parties cannot vacate a judgment by unendorsed stipulation. *See, e.g.*

*United States v. Thomas*, 135 F.3d 873, 874 n. 1 (2d Cir.1998) ("We emphasize, however, that the parties' consensus, and our waiver of oral argument, as they asked, should in no way suggest that parties may 'consent' or 'stipulate' to the vacatur of a judgment entered in a court of law.").

done. Here as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline...". 375 U.S. at 387, 84 S.Ct. 397. Those facts are no less true in this case. Here, plaintiff did an act which, if properly done, would have postponed both the deadline for filing an appeal and the deadline for filing a post-trial motion for a new trial. Here, plaintiff relied on the Court's *sua sponte* orders of June 10 and June 11 extending the time for filing motions. There is a quantum difference between such orders and the endorsement of orders presented by the parties held to be insufficient to constitute "unique circumstances" in *Endicott Johnson*, 116 F.3d at 57. Here, the parties noted that the judgment appeared erroneously to have been entered, and they quickly acted by stipulation to vacate that judgment.

Other courts have applied the unique circumstances exception to cases less compelling than the one at bar. In *Pahuta v. Massey–Ferguson, Inc.*, 997 F.Supp. 379, 382–83 (W.D.N.Y.1998), judgment was filed on November 12, 1997, with an order that motions under Rules 50 and 59 be filed by December 10, 1997. Upon review, the court found that, under the unique circumstances of the case, the motions would be regarded as timely made. It specifically noted that "courts have held that where a judge extends the time within which to move for a new trial, albeit erroneously, and counsel relies on the court's permission to his detriment, an equitable exception exists which allows the motion to be heard." *Id.* at 383 (citations omitted). To refuse to allow an equitable exception "otherwise would result in manifest unfairness and obvious great hardship to plaintiff." *Id. See also Agola v. Hagner*, 678 F.Supp. 988, 990–91 (E.D.N.Y.1987) (court would consider motion made more than 10 days after entry of judgment where it had previously granted request to extend time for filing motions); *In re Joint Asbestos Litigation*, 762 F.Supp. 519 (E.D.N.Y.1991) (Patterson, J.) (although Rule 59 motion was made almost 60 days after entry of judgment, court had granted parties lengthy time in which to make motions and thus equitable exception applied). It is worth mentioning that in both *Pahuta* and *Agola*, the respective courts took pains to note that (unlike the circumstances in this case) it had not intended to provide for an extension of time within which to file Rule 59 motions; the parties simply had reasonably misunderstood. *See Pahuta* at 383; *Agola* at 990.

Further facts exist in this case to strongly compel a "unique circumstances" exception to the rule. Here, not only did the Court "lull" plaintiff into a false understanding that her filing deadline could be extended, but it (in the person of Judge Leisure) then So Ordered the stipulation vacating the judgment and further extending the time for filing post-trial motions. The Court then further affirmed the appropriateness of plaintiff's actions by considering the motions on the merits and granting plaintiff's motion. Plaintiff expended considerable effort and resources in waging that successful battle, and to reverse that ruling now would result in the type of "manifest unfairness and hardship to plaintiff" frowned upon by the courts. *Pahuta*, 997 F.Supp. at 383.

The cases cited by defendants, who now seek to brand plaintiff's motion as untimely, are readily distinguishable from the case at bar. In those cases, the court had done nothing affirmative to lead the parties to believe that they might extend the time for filing post-trial submissions. *See United States v. Padilla*, 1998 WL 23550, at *3 (S.D.N.Y. 1998) ("The fact that the court simply signed orders presented to it, purporting to grant the parties' joint requests for relief, does not constitute 'unique circumstances.' ") (quoting *Endicott Johnson*, 116 F.3d at 57); *United States v. Weissman*, 1997 WL 539774, at *6 (S.D.N.Y.1997) (same). In *Endicott Johnson*, "it [was] not the court that has misled the party who would appeal," 116 F.3d at 57; in that case, the litigant had "simply erroneously interpreted the rules," and accordingly, "the circumstances [did] not warrant an extension beyond the time limits provided by the Rules." *Id.*

While I have analyzed the case primarily from the perspective of the plaintiff, my reasoning applies equally to the defendants' post-trial motion for JMOL.

For the foregoing reasons, I conclude that the parties' original post-trial motions, filed in July 1998, were timely. Accordingly I adhere to the conclusions reached in the January Opinion.

## III

Defendants' more recent motion stands upon an entirely different footing.

As noted, on February 2, 1999, defendants moved for the first time for a new trial on all issues, liability and damages, based upon a jury compromise which they professed only then to perceive.

That motion will be denied for three reasons, any one of which would suffice. The motion is untimely; defendants waived the right to make it; and it lacks merit.

### A. Timeliness

■ Because defendants did not raise the issue of jury compromise in their original Rule 50 motion, and their time for filing a Rule 59 motion expired on July 27, 1998 (see discussion at p. 87, supra ), they now attempt to dress up their current motion in the mantle of Local Civil Rule 6.3.[3]

■ Under Local Rule 6.3, a "notice of motion for reconsideration or reargument shall be served within ten (10) days after the docketing of the court's determination of the original motion." Local Civ.R. 6.3. The Foundation's motion was served on February 2, 1999, within ten days of the docketing of the January Opinion granting a new trial on damages to plaintiff. However, the issues

raised in defendants' self-styled Rule 6.3 motion relate back to the original June 23, 1998 judgment—not to the January Opinion—and should have been raised in a timely, substantive motion under Rule 59.[4] See Chan v. Reno, 932 F.Supp. 535 (S.D.N.Y.1996) (motion to reconsider was not timely filed, so as to nullify notice of appeal, when it was brought more than ten days after entry of judgment, and the judgment was the subject of appeal).

■ Local Rule 6.3 "precludes a party from advancing new facts, issues or arguments not previously presented to the court." Bank Leumi Trust Co. v. Istim, Inc., 902 F.Supp. 46, 48 (S.D.N.Y.1995); Mina Investment Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 249–50 (S.D.N.Y.1999) (collecting cases). Under Rule 6.3, the movant must "set[ ] forth the matters or controlling decisions which counsel believes the court has overlooked." Local Civ.R. 6.3. See also Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 113 (S.D.N.Y.1997) (motion to reargue may be granted only where "the court overlooked the controlling decisions or factual matters that were placed before the court in the underlying motion") (collecting cases); Anglo Am. Ins. Group, P.L.C. v. CalFed Inc., 940 F.Supp. 554, 557 (S.D.N.Y. 1996) (moving party "must present matters or controlling decisions the court overlooked that might materially have influenced its earlier decision") (internal quotations omitted). The decision whether to grant or deny a motion for reconsideration or reargument lies within the sound discretion of a district

3. If it is regarded as a Rule 59 motion, defendants' motion is untimely, as it was filed long after the filing deadline as extended by the Court, and the doctrine of unusual circumstances would not apply under the reasoning in Part II of this opinion. In recognition of this fact, both defendants insist that their motions were filed under Local Rule 6.3. It is worth noting that courts disfavor the circumvention of Rule 59 by framing a motion as one brought under Local Rule 6.3. See, e.g., Zarelli v. New York City Bd. of Ed., 1996 WL 599386, at *3 n. 1 (E.D.N.Y.1996). Corbett v. Guardian Worldwide Moving Co., 164 F.R.D. 323, 327 n. 5 (E.D.N.Y.1995); Knight v. U.S. Fire Ins. Co., 1986 WL 3787, at *1 (S.D.N.Y.1986).

4. Indeed, defendants were aware of this argument and did raise it orally before the jury re-

turned its verdict. See quotations from trial transcript at p. 91–92, infra. However, they chose not to pursue it until plaintiff succeeded in her Rule 59 motion; it is only now that, unhappy with the disposition of their losing Rule 50 motion and the plaintiff's victory on her Rule 59 motion, they attempt to make the argument (which, incidentally, is inconsistent with their previous arguments to the Court). Where the issue is a challenge to the verdict on the basis of compromise, "the parties detrimentally affected must act expeditiously to cure it, not lie in wait and ask for another trial when matters turn out not to be to their liking." Phav v. Trueblood, Inc., 915 F.2d 764, 769 (1st Cir.1990) (internal quotations omitted).

court judge and will not be overturned on appeal absent an abuse of discretion. *Boyle v. Stephens, Inc.*, 1998 WL 80175, at *1 (S.D.N.Y.1998) (citations omitted).

■■■■ "Whatever may be the purpose of [rules governing motions to reconsider] it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *United Artists Theatre Circuit, Inc. v. Sun Plaza Enterprise Corp.*, 1998 WL 178816, at *1 (E.D.N.Y. 1998) (internal quotations omitted). *See also In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (Rule 6.3 motion "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved."). Accordingly, Local Civil Rule 6.3 may not be used as a "vehicle[ ] for bringing before the court theories or arguments that were not advanced earlier." *United Artists Theatre Circuit*, 1998 WL 178816, at *1 (internal quotations omitted). The purpose of Rule 6.3 is to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y.1988) (internal quotations omitted).

■■■■ The defendants are now attempting to plug the gaps of their lost Rule 50 motion with an additional and unrelated claim for relief. They have failed to set forth any issues or authority overlooked by the Court. Therefore, they have failed to demonstrate that they are entitled to reconsideration of the Court's judgment pursuant to Local Rule 6.3. *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 1998 WL 567900, at *3 (S.D.N.Y.1998). Defendants' failure in this regard is hardly surprising. Since defendants never raised the issue of possible jury compromise in its prior motion or during the pendency of the original motions, the Court could not have "overlooked" this argument in deciding those motions, and the argument therefore cannot serve as a basis for

a motion under Local Rule 6.3. *See Flair Broadcasting Corp. v. Powers*, 1999 WL 6363, at *2 (S.D.N.Y.1999). Put another way, there simply are no controlling factual or legal issues overlooked by the Court, since the Court did not look over anything currently being raised by defendants.

■■■■ It follows that defendants' motion for a new trial was not timely filed under the Court's scheduling order.[5]

### B. *Waiver*

Quite apart from the untimeliness of defendants' motion for a new trial, they have waived the right to make it.

During their deliberations, the jurors sent several notes to the Court, to which I responded after consulting with counsel. The earlier notes are discussed under Part III(C), *infra.* A time came when the jurors sent a note which read: "We are unable to reach a conclusion. Difference is $2,000."

After consulting with counsel, I recalled the jury and gave a modified *Allen* charge, to which no objection was made. Tr. 1243 1246. The jury retired to resume deliberations. I then initiated a further colloquy with counsel by saying:

> THE COURT: Here is something that I want you to think about. It would seem as if they are now on questions of damages. I don't know how else to interpret the reference to a dollar figure. If that is so, and if they have followed my instructions on the special verdict form correctly, which I suppose we really won't know until we see it, then it would seem to follow that on one theory or another the issue of liability has been resolved in favor of the plaintiff. Against that background, my question for you is this: If they cannot agree on damages, which is what they seem to be hung up on—and, I should add parenthetically, it is my practice to give the *Allen* charge only once—if they cannot agree on damages, then do we accept the verdict of the jury and ask them to give us a special

5. Plaintiff's timely filing of a Rule 59 motion does not cure the defect of defendants' untimely Rule 59 motion. *See Tisdel v. Barber*, 968 F.Supp. 957, 963 (S.D.N.Y.1997) (Conner, *J.*) ("The fact that Tisdel filed a timely motion to set aside the damages portion of the verdict does not make [the defendants'] cross-motion timely.").

verdict form, to the extent that it has been completed so that if there were to be a retrial it would be limited to issues of damages rather than liability? That is something that I think we should all consider.

MR. LEVY [counsel for defendant Foundation]: I would just like to point out to the court that obviously we have no way of knowing at this point in time, despite what the note says, what exactly their verdict is.

THE COURT: That is true.

MR. LEVY: There is a significant possibility at this point in time that this could be a compromise verdict, and in light of that it would be, I think, premature in suggesting a rationale to the court until we see whether or not in the near future they come back with a verdict.

THE COURT: I think that is fair enough, Mr. Levy, but suppose back comes a note saying we still can't agree. Let me put this to you. Would it be appropriate then for the court to say give us your special verdict with as many questions that you filled out that you could agree?

MR. LEVY: I think not, for two reasons. Number one, this was not a bifurcated case. All issues were tried in one forum. Secondly, the inherent nature of a split verdict on damages vis a vis liability suggests exactly that this was a potential compromise verdict, in that jurors compromised their beliefs potentially on liability for purposes of reductions in damages that they still are not able to agree upon, and on that basis I don't think that we can accept any part of a special verdict without the special verdict form being answered in its entirety.

Tr. 1247–1248. Counsel for plaintiff also cautioned against any communication from the Court to the jury. I accepted counsel's advice. We awaited further word from the jury. That word arrived in the form of a verdict, when the jury handed up its completed Special Verdict Form, the contents of which have been described in prior opinions.

█ Although prior to the verdict counsel for defendant Foundation professed a concern that "there is a significant possibility at this point in time that this could be a com-

promise verdict," neither defendant voiced that concern after the verdict was received and before the Court discharged the jury. Nor, in those post-trial motions which were timely, did either defendant argue that the jurors had impermissibly compromised the issues of liability and damages. On the contrary, in opposing plaintiff's Rule 59 motion for a new trial on damages, both defendants energetically sought to justify the jury's award. Defendants limited their timely post-trial motions to one for judgment as a matter of law on liability, which the Court rejected. They did not move in the alternative for a new trial on the basis of a compromise verdict. Nor did defendants oppose plaintiff's Rule 59(a) motion on the ground that, if there were to be a new trial, it should embrace issues of liability as well as damages due to a possible jury compromise.

Only when defendants lost their motion on liability and plaintiff won her new trial on damages did defendants profess a perception that the verdict was compromised. Defendants now argue faintly that the compromised nature of the verdict was not apparent to them until the Court wrote its opinion granting plaintiff's motion. While it is flattering to be cast in the role of the author of a latter-day Book of Revelation, the argument is disingenuous at best; all the facts that defendants now say show the jury compromised were apparent as soon as the verdict was received. In these circumstances, I would have to abandon entirely all standards of fair dealing and practice to allow defendants to make that argument at this time. Fairness mandates the conclusion, at which I arrive, that defendants have waived the point. There is ample authority for that proposition, which in any event is self-evident. In *Phav v. Trueblood, Inc.*, 915 F.2d 764, 769 (1st Cir.1990), the First Circuit held that a party's failure to object to the form of the special interrogatories submitted to the jury precluded a subsequent argument that the answers indicated a compromise verdict.

[T]he use of special interrogatories puts the parties on notice that there might be an inconsistent verdict. If a slip has been made, the parties detrimentally affected must act expeditiously to cure it, not lie in

wait and ask for another trial when matters turn out not to their liking.... We hold that defendant waived any objection to the special interrogatories.... Because of defendant's waiver, we do not consider the jury's answers to the special questions as evidence of its confusion on liability. To decide otherwise would countenance agreeable acquiescence to perceivable error as a weapon of appellate advocacy. (citations and internal quotation marks omitted).

In the case at bar, defendants did not only agreeably acquiesce in the jury's damages awards, they strenuously defended them. *Cf. Hatfield v. Seaboard Air Line Railroad Company*, 396 F.2d 721, 723 (5th Cir.1968) (in directing a new trial on ground of a compromise verdict, court of appeals stressed that "neither party urged acceptance in the trial court of the verdict finally rendered.").

## C. *Merits of the Defendants' Motion*

Even if defendants' motion for a new trial on the basis of a compromise verdict was timely (which it was not), and defendants had not waived the point (which they have), there is no merit to the motion.

To recapitulate, the relief that defendants seek on the present motion is a new trial on all issues, liability and damages. The basis for that relief is defendants' contention that the jury returned a compromise verdict.

A new trial limited to damages is sanctioned by Rule 59(a), which authorizes a district court to grant a new trial "on all or part of the issues." Fed.R.Civ.P. 59(a). *See also Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 17 (2d Cir.1992) (affirming district court's grant of partial new trial on damages only). The Second Circuit noted in *Steinsvaag*:

The most common example of a partial new trial is a new trial limited to damages when liability has been properly determined. A new trial on damages only is not proper if there is reason to think that the verdict may represent a compromise among jurors with different views on whether defendant was liable or if for some other reason it appears that the error on the damage issue may have affected the determination of liability.

979 F.2d at 17 (citations and internal quotation marks omitted).

As Judge Stanton has stated succinctly, "[a] verdict can be set aside if the jurors compromise on the question of liability, but not if they compromise on the amount of damages." *Shepherd v. Metro–North Commuter Railroad Co.*, 791 F.Supp. 1008, 1011 (S.D.N.Y.1992) (citing *Maher v. Isthmian Steamship Co.*, 253 F.2d 414, 416 (2d Cir.1958)).[6] Thus it is well settled that "[a]n inadequate damages award, standing alone, does not indicate a compromise among jurors. Besides inadequate damages, there must be other indicia of compromise, such as difficulty in jury deliberations or close questions of liability." *Steinsvaag*, 979 F.2d at 17 (citation omitted). In *Maher*, the Second Circuit said, somewhat more expansively: "[T]he verdict must be inconsistent with the facts adduced at the trial if the reviewing court is to reverse it on the ground of an improper compromise by the jury." 253 F.2d 414, 416–17. The *Maher* court went on to state the rule that "the record itself viewed in its entirety must clearly demonstrate the compromise character of the verdict, otherwise it is not error for the trial judge to refuse to set the verdict aside on this ground." *Id.* at 419. More recently, the Second Circuit has said: "We may infer that a verdict is a compromise where damages are awarded in an amount inconsistent with the theory of liability offered at trial together with other indicia such as a close question of liability." *Atkins v. New York City*, 143 F.3d 100, 104 (2d Cir.1998).

The Second Circuit has not defined the phrase "a close question of liability" other than to instruct by example. I take the

---

**6.** That summary of the law is subject, of course, to the *caveat* that if a jury errs on damages to the extent that its verdict is irrational, egregiously wrong, or constitutes a miscarriage of justice, the district court may order a new trial on the question of damages under Rule 59(a). That is what happened in *Steinsvaag*, where the trial judge, granting plaintiff's motion for a partial new trial, held that "a reasonable jury applying the court's instructions could not find damages in such a low amount." 979 F.2d at 17. I have reached the same conclusion in the case at bar.

operative word to be the adjective "close." In every case that goes to trial, if the defendant does not concede liability he "question[s]" it by definition, and may "vigorously contest [ ]" the issue even though plaintiff's evidence against him is strong[7]. *Id.* So a *"close* question of liability" must mean something more or different than that.

In *Steinsvaag,* the Second Circuit contrasted cases where it detected a "close question of liability" with those where it did not. 979 F.2d at 17–18. That separation of wheat from chaff is instructive. A close question of liability was detected in *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1445–46 (10th Cir.1988), where the jury announced on a Friday afternoon that it could not reach a verdict and asked for the weekend off; returned on Monday morning and asked to review portions of depositions that related solely to the issue of liability; told the court it was unable to reach a unanimous decision; was excused for lunch; and two hours later returned its verdict awarding damages that represented only "a small fraction" of plaintiff's claim. 859 F.2d at 1446. The Tenth Circuit commented: "The jury's sudden arrival at unanimity, when just a few hours before it was still struggling with an apparently close issue of liability, raises the question of the reliability of the jury's verdict." *Id.* at 1446. In *Mekdeci v. Merrell National Laboratories,* 711 F.2d 1510 (11th Cir.1983), the jury began deliberations on a Monday; "sent several communications to the judge indicating its uncertainty on the central issue of causation," 711 F.2d at 1515 (footnote omitted); on Thursday sought the trial judge's permission to render a verdict "with an explanation of its reasons," which the judge refused; half an hour later sent a note saying that it was "hopelessly deadlocked," to which the judge responded with a modified *Allen* charge; and on the following day returned a verdict in which "the district court correctly held that the award was inadequate." 711 F.2d at 1514–15. The Eleventh Circuit said that in deliberating over four days in a case where the parties "strongly contested" the issue of liability, the jury's

communications with the judge during the deliberations

revealed its focus on that central controversy. Even more indicative, however, is the fact that the jury attempted to qualify its verdict. The effort to explain their verdict, coupled with the announcement of a deadlock soon after the judge denied the request, reinforces the notion that the jurors could not reach an agreement on the substantive issues.

711 F.2d at 1515.

In contrast, the *Steinsvaag* court pointed to *Phav v. Trueblood,* 915 F.2d at 768–69, and *Burger King Corp. v. Mason,* 710 F.2d 1480, 1487–88 (11th Cir.1983), cases affirming grants of partial new trials "where [the] only indication of juror compromise was [an] inadequate damages award." 979 F.2d at 17. *Steinsvaag* itself, affirming the district court's grant of a new trial limited to damages, was content to observe that "[t]he jury deliberated only one day, without incident, and the issue of the defendants' liability for breach of contract was reasonably clear." 979 F.2d at 18.

■ The conclusion I draw from the Second Circuit's analysis in *Steinsvaag* is that a "close question on liability" is not demonstrated by the circumstances, common to most trials, that the defendant "questioned," that is to say, "contested" liability, and litigated the issue "strenuously," that is to say, not "lazily" or "lackadaisically." The existence of a "close question on liability" within the present context is shown, not by the commonplace *trial conduct* of defense counsel, but by *deliberative conduct* of the jurors indicating that *they* regarded the liability question as too "close" to allow unanimity, and accordingly may have compromised on damages in order to reach a verdict.

■ If that is the proper conclusion to draw, then the record in the case at bar furnishes no basis for detecting a "close question of liability" in the minds of the jurors, such as to raise the specter of compromise. The core issue of fact on liability was whether, during plaintiff's tenure as pro-

---

**7.** Perhaps particularly so in that circumstance, on the theory that the best defense is a fierce offense, or in fulfillment of the axiom that it is the hurt bird that flutters.

ject director, Dean Kish subjected her to a series of racial slurs and epithets. Plaintiff testified that Kish said these things; Kish denied it strenuously. The jury had to decide whom to believe. The related issue, whether Kish by those words and other conduct created intolerable working conditions resulting in plaintiff's constructive discharge, could arise only if the jury believed plaintiff's account and rejected that of Kish, as the jury clearly did, given its finding that defendants constructively discharged plaintiff. The question of liability in the case at bar was simple, not complicated; its resolution turned upon plain speech, rather than subtle innuendo or elaborate inference; and did not require the jury to unravel a complex web of direct and circumstantial evidence. It was, in sum, a "she said/ she said" case.

Nor is there any indication that the jury struggled with or otherwise regarded this core question as "close." The jury did not take a disproportionately long time to deliberate, relative to the length of the trial. Following jury selection, counsel made their opening statements on June 2, 1998, a Tuesday. The evidence was closed on June 10, a Wednesday. Counsel summed up, the Court charged the jury, and the jury began deliberating at 2:25 p.m. on June 10. It retired for the evening at 4:15 p.m. and resumed deliberating at 11:10 a.m. on June 11, a Thursday (one juror arrived late). The jury reported that it had reached a verdict at 3:20 p.m. on June 11. Thus, following a case taking over six trial days during which a considerable number of exhibits were received into evidence, the jury deliberated for six hours and ten minutes before handing up a verdict requiring them to answer a number of specific questions. That is a reasonable period of time for deliberation, given the length of the trial.

As noted, in some cases a jury's notes contain indicia of disagreement on liability which, if quickly followed by a verdict for inadequate damages, support an inference of compromise. The jury in the present case sent the Court a number of notes, but they contain no cause for concern.

At 4:15 p.m. on June 10, the jury sent a note containing three questions: "1. Do we

have to be unanimous to proceed to next question? 2. Is unanimity a requirement for decision? 3. Can you give us a more complete definition of constructive discharge?" I answered "yes" to the first two questions, and expanded on the definition of constructive discharge in response to the third. The jury then asked to be excused until the next morning, June 11.

At 12:13 p.m. on June 11, the jury sent a note requesting five documents or categories of documents. The first four related solely to liability. The fifth, requesting plaintiff's job search records after leaving defendants' employ, may be regarded as damages-related.

At 1:30 p.m. on June 11, the jury sent a note asking for "plaintiff's calculation of damages" and "plaintiff's PAF's [Personnel Action Forms] for 1992/1993." The forms contain information arguably pertinent to both damages (salary figures) and liability (particular employment actions taken).

At 3:35 p.m. on June 11, the jury sent a note which said: "We are unable to reach a conclusion. Difference is $2,000." After conferring with counsel, I responded with a modified *Allen* charge. The jury returned its verdict at 3:55 p.m.

Defendants profess to find in this chronology and these notes the dread spoor of a compromise verdict. However, the Second Circuit has cautioned district courts not to grant a new trial in circumstances where, "[w]hile a compromise may have occurred, there is an equally reasonable and perhaps even better explanation which involves no jury misconduct." *Ajax Hardware Manufacturing Corp. v. Industrial Plants Corp.,* 569 F.2d 181, 184 (2d Cir.1977).

That is clearly the case here. The jury's inquiry as to the need for unanimity, and its request for a repetition of the Court's instructions on constructive discharge, do nothing to indicate a compromise verdict, as the First Circuit specifically held in *Pha,* 915 F.2d at 768. Viewing the notes as a whole, I think the most reasonable interpretation of them is that the jury quickly decided to believe plaintiff and disbelieve Kish. That accounts for the request in the jury's first

note for a more complete definition of constructive discharge, a term with which the jury would not have needed to be concerned if it disbelieved plaintiff and believed Kish. Once reminded of the need for unanimity, the jury's focus as revealed by its notes gradually and perceptibly changed from liability to damages. The fact that one note asked for documents relating to liability and damages at the same time, standing alone, furnishes no indication that the jury compromised its verdict. *See Shepherd v. Metro–North,* 791 F.Supp. at 1011. Unlike the cases discussed *supra,* nothing in this case indicates jury disagreement on liability and a subsequent compromise of that issue. Nor is there anything in the manner in which the jury answered the questions on the Special Verdict Form that indicates a compromise verdict.

In its most recent case on the point, *Atkins v. New York City,* 143 F.3d 100, 104 (2d Cir.1998), upon which defendants at bar place their primary reliance, the Second Circuit concluded:

> Although there is in this case no evidence proving that a compromise verdict was returned, for the purpose of determining whether we should order a new trial on all issues, it is sufficient that the issue of liability was close and vigorously contested and that the verdict on damages was inconsistent with the facts adduced at trial.

I acknowledge that this formula may not square entirely with the conclusion I drew from the *Steinsvaag,* court's analysis, namely, that the showing of a "close question on liability" must be made by evidence of jury conduct. But I do not read *Atkins* to require a new trial on all issues in the case at bar. *Atkins* holds that, in order to brand a verdict as a compromise, "other indicia such as a close question of liability" must be present *together with* an award of damages "inconsistent with the *theory* of liability offered at trial," or more precisely, "inconsistent with the *facts* adduced at trial." 143 F.3d at 104 (emphases added). *Atkins* was a § 1983 civil rights case alleging, *inter alia,* the use of excessive force by a police officer in arresting plaintiff. The jury resolved the issue of liability in plaintiff's favor, but awarded only $1

in nominal compensatory damages, despite clear and uncontroverted evidence of a serious injury and significant pain and suffering, and the controlling principle of law that a successful § 1983 plaintiff is limited to nominal damages "only in the absence of proof of actual injury." *Id.* at 103. Since on the evidence adduced at trial "there was never a moment when force applied by [defendant] could have been found to be lawful," it followed that "at least some of Atkin's actual injuries must have been caused by [defendant's] use of excessive force and are compensable as a matter of law," so that "the jury's rejection of Atkin's undisputed injuries and of the pain and suffering from the beating is unsupportable." *Id.* at 103, 104.

Thus the damages awarded in *Atkins* were fundamentally and conceptually inconsistent with the proof plaintiff adduced at trial, a factor that appears to have inclined the Court of Appeals to suspect the presence of a compromise verdict. *See also Nat'l Railroad Passenger Corp. v. Koch Indus., Inc.,* 701 F.2d 108, 110 (10th Cir.1983) ("While a grossly inadequate award of damages by itself does not require retrying the liability issue, suspicion should be aroused if the jury awards only nominal damages ...") (citing *Hatfield,* 396 F.2d 721, in which jury awarded $1 to plaintiff with uncontested special damages of $2,795.75 and substantial pain and suffering). The Second Circuit has long held that "[a]lthough it is possible that the jury's special verdicts encompassed some undisclosed compromise, *absent obvious inconsistencies* we will not presume that the jury's findings represent anything other than good faith responses to the questions presented." *Crane v. Consolidated Rail Corp.,* 731 F.2d 1042, 1050 (2d Cir.1984) (internal quotations omitted) (emphasis added). *See also Maher v. Isthmian Steamship Co.,* 253 F.2d 414, 416–17 (2d Cir.1958) ("the verdict must be inconsistent with the facts adduced at the trial if the reviewing court is to reverse it on the ground of an improper compromise by the jury"). In the case at bar, while I have concluded in the prior opinion that the jury's award to plaintiff is inadequate and cannot

stand[8], I do not think that the facts in *Atkins*, and the Court of Appeals' rationale derived from those facts, are sufficiently analogous to preclude a partial new trial in this case.

Accordingly, for the reasons stated in this Part of the Opinion, even if defendants had filed a timely motion for a new trial on all issues, and had not by their conduct waived their right to ask for that relief, I would have denied their motion.

I do not agree with defendants' conclusory argument that the proof on liability and damages is so intertwined as to make a trial on damages alone impractical or unfair.

Trial on the issue of plaintiff's damages will commence on October 4, 1999 at 10:00 a.m. in Room 17C, 500 Pearl Street. Counsel are directed to attend a pre-trial conference at 4:30 on June 9, 1999.

The foregoing is SO ORDERED.

---

8. In discussing the jury's backpay award, the January Opinion said:

> In short, there is no way to reconcile the amount the jury awarded in backpay with the evidence adduced at trial. I must therefore conclude that the jury's verdict was seriously erroneous, and grant a new trial on the issue. 1999 WL 33875 at *12.

While defendants would have it otherwise, that observation is not intended to suggest a lack of reconciliation indicative of a compromise verdict. The quoted language does no more than convey the fact that the jury's backpay award was inadequate, given the evidence of plaintiff's earnings during the relevant period. As discussed *supra*, an inadequate award of damages by itself is not sufficient to require a new trial on all issues on the basis of jury compromise.